FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ NOV 1 5 2005 ★
BROOKLYN OFFICE

ORIGINAL
D&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GENOWEFA ZARANSKA,

       Petitioner,

  -against-

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, TOM RIDGE AS
SECRETARY OF UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, and MARY ANN
GANTNER AS DISTRICT DIRECTOR, NEW
YORK DISTRICT, UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES,

       Respondents.

-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. MISC-04-0169
(FB)(JMA)

*Appearances:*
*For the Petitioner:*
PRZEMYSLAW JAN BLOCH, Esq.
26 Court Street, Suite 2113
Brooklyn, NY 11242

*For the Respondents:*
ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
    By: Scott Dunn
    Assistant United States Attorney
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201

**BLOCK, District Judge:**

       On June 8, 2004, Petitioner Genowefa Zaranksa ("Zaranska") filed a petition with the Court pursuant to 8 U.S.C. § 1447(b), requesting that the Court adjudicate her

1

application for naturalization or remand the application to the United States Citizenship and Immigration Services (the "CIS") for adjudication. While the petition was *sub judice*, the CIS denied Zaranska's application for naturalization. The United States Department of Homeland Security ("DHS"), Michael Chertoff[1] as Secretary of the Department of Homeland Security, the CIS, and Mary Ann Gantner as District Director of the CIS (collectively, "respondents"), moved to dismiss Zaranska's petition pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that (1) it became moot following CIS's denial of her application, and (2) Zaranska has not exhausted her administrative remedies under 8 U.S.C. § 1421(c), which sets forth the process by which an applicant may appeal the CIS's denial of a naturalization application.[2] Respondents moved in the alternative for summary judgment denying Zaranska's application on the grounds that her prior conviction for assaulting a police officer was a crime of moral turpitude which prevents the requisite finding under 8 U.S.C. § 1427(a) and 8 C.F.R. § 316.10 that she is a person of "good moral character."

---

[1] When this petition was filed, Tom Ridge, then Secretary of the Department of Homeland Security was named as a respondent. Mr. Chertoff, who has since replaced Mr. Ridge, is substituted as a party respondent in this case pursuant to Fed. R. Civ. P. 25(d)(1).

[2] 8 U.S.C. § 1421(c) provides:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

The Court referred the matter to Magistrate Judge Azrack for a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b). On July 18, 2005, Magistrate Judge Azrack issued the R&R, familiarity with which is assumed, concluding that the federal courts have exclusive jurisdiction over naturalization applications pursuant to 8 U.S.C. § 1447(b); therefore, the motion to dismiss should be denied and the matter adjudicated by the Court. Magistrate Judge Azrack further recommended that respondents' motion for summary judgment be denied on the grounds that Zaranska's prior conviction did not involve a crime of moral turpitude and that Zaranska was therefore not ineligible for naturalization on that basis. Respondents filed timely objections to the R&R; therefore, the Court will review *de novo* those portions of the R&R as to which objections were made. *See* 28 U.S.C. § 636(b)(1); *United States v. Tortora*, 30 F.3d 334 (2d Cir. 1994). For the reasons set forth below, the Court adopts the R&R.

I.

A. Respondents' Motion to Dismiss

As Magistrate Judge Azrack noted, 8 U.S.C. § 1447(b) provides that if the CIS fails to make a determination on a naturalization application within 120 days following an examination of that applicant under 8 U.S.C. § 1446,

> the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

3

8 U.S.C. § 1447(b). The question of whether district courts have exclusive jurisdiction over a petition filed in district court under § 1447 after expiration of the 120-day period, thereby depriving the CIS of jurisdiction to decide the naturalization application while the petition is pending in the district court, has not been addressed by the Second Circuit. Judge Azrack's determination that a petition filed with a district court under § 1447 strips the CIS of jurisdiction to act upon the petitioner's naturalization application relies primarily on a recent unanimous *en banc* decision by the Ninth Circuit, *United States v. Hovespian*, 359 F.3d 1144 (9th Cir. 2004).

Respondents object to Judge Azrack's reliance on the Ninth Circuit's decision, arguing that an unpublished Fourth Cicuit decision, an unpublished decision from the Southern District of New York, a published decision from the Northern District of Illinois, and a Second Circuit decision involving the BIA's jurisdiction to reconsider its denial of a claim under the United Nations Convention Against Torture, provide more persuasive guidance. Respondents assert that the decision in *Hovespian* is flawed because the court misinterprets the Supreme Court's decision in *Brock v. Pierce County*, 476 U.S. 253 (1986), from which the Ninth Circuit derives the principle that Congress demonstrates an intent to strip an agency of jurisdiction where a statute both requires that the agency act within a particular time period and specifies a consequence for failure to comply with the time limit. Respondents also take issue with the Ninth Circuit's determination that the purpose and legislative history of 8 U.S.C. § 1447 support its construction of the statute. Finally, respondents object that once a naturalization application has been denied, 8 U.S.C. §

1421(c) provides the only mechanism for judicial review.

The Court concludes that the *Hovespian* decision is well-reasoned, and that Magistrate Judge Azrack's reliance upon it, rather than the cases cited by respondents, was proper. The Ninth Circuit's analysis of the plain language of the statute is persuasive, as is its examination of the statute's purpose and legislative history. The Court also disagrees with respondents' reading of *Brock*, and finds that *Brock*'s reasoning supports the Ninth Circuit's decision. In *Brock*, the court found that the statute at issue did not evidence Congress's intent to deprive the agency of jurisdiction because the statute did not specify any consequence for the agency's failure to act within the specified time period, and the court simply declined to interpret Congress's silence to indicate an intent to foreclose the possibility of any action by the agency after expiration of the relevant deadline. The Court agrees with the Ninth Circuit's observation that, in contrast to the statute at issue in *Brock*, § 1447(b) both requires the CIS to act within a certain period of time and specifies a consequence for failure to comply with the deadline (placing jurisdiction over the naturalization application in the district courts), thereby indicating an intent to strip the agency of jurisdiction.

The cases cited by respondents do not provide persuasive authority to the contrary: the Second Circuit's decision in *Khouzam v. Ashcroft*, 361 F.3d 161 (2d Cir. 2004) involved an entirely different statutory provision than the one at issue here, and the Court concludes that its reasoning is not controlling. *Langer v. McElroy*, 2002 WL 31789757 (S.D.N.Y. Dec. 13, 2002), is also not on point; in *Langer* the court concluded that analysis

5

under § 1447(b) was not proper because the INS had made a decision on the petitioner's application prior to her filing of a complaint in district court. *Id.* at *3. Similarly, *Chavez v. INS*, 844 F. Supp. 1224, 1225 (N.D. Ill. 1993), is distinguishable in that the petitioner in *Chavez* had previously successfully sought a remand from the district court under section 1447(b), and after the INS then proceeded to adjudicate and deny the application, the district court held that the proper avenue for review was under 8 U.S.C. § 1421(c), rather than § 1447(b). Finally, the Court does not find the Fourth Circuit's decision in *Kia v. INS*, 175 F.3d 1014, 1999 WL 172818 (4th Cir. 1999) (table), to be persuasive. *Kia* was decided prior to *Hovespian*, relies on a Ninth Circuit decision that was distinguished and overruled in *Hovespian*, and unlike *Hovespian*, does not include any detailed analysis of § 1447 or its legislative history. In the only published case located by the Court to address the issue following the Ninth Circuit's decision in *Hovespian*, the district court of the District of Columbia agreed with the Ninth Circuit's conclusion that filing a petition in district court pursuant to § 1447(b) strips the CIS of jurisdiction to decide the application. *See Castacani v. Chertoff*, 377 F. Supp. 2d 71, 73-75 (D. D.C. 2005).

Finally, respondents' objection that § 1421(c) provides the sole mechanism for review once an application for naturalization has been denied does not affect the Court's conclusion that § 1447 vests the district courts with exclusive jurisdiction. Respondents' assertion may be true where the CIS's denial occurs *prior to* an applicant's filing of a petition in the district court. Because the Court concludes that the filing of a petition in district court pursuant to § 1447 strips the CIS of jurisdiction, a denial issued by the CIS

after the petition is filed cannot have any effect, and § 1421(c) therefore becomes irrelevant to the analysis.

**B. Motion for Summary Judgment**

Magistrate Judge Azrack also concluded that respondents' motion for summary judgment should be denied because the crime of which Zaranska was convicted is not a crime involving moral turpitude; consequently, Zaranksa is not statutorily ineligible for naturalization.[3] Magistrate Judge Azrack further determined that under the rule of lenity set forth in *Leocal v. Ashcroft*, 534 U.S. 1, 125 S. Ct. 377, 384, 160 L.Ed. 2d 271, 282 (2004), any doubt as to whether the New York statute under which Zaranksa was convicted involves moral turpitude should be resolved in favor of the petitioner. Respondents object that Magistrate Judge Azrack erred in failing to defer to the immigration authorities' determination of what constitutes a crime of moral turpitude, and argue that under the BIA's decision in *Matter of Danesh*, 19 I. & N. Dec. 669, 673 (BIA 1988), the offense of which Zaranska was convicted involves moral turpitude. Respondents further object that because an applicant bears the burden of proving her eligibility for naturalization, Magistrate Judge Azrack erred in applying the rule of lenity to resolve any residual doubts about the nature of the crime of which Zaranksa was convicted.

The Court concludes that Magistrate Judge Azrack properly looked to Second

---

[3]Zaranska was convicted under NY Penal Law § 120.15(3), which provides that a defendant shall be guilty of assault in the second degree if, "with intent to prevent [] a police officer . . . from performing a lawful duty . . . [the defendant] causes injury to such [] police officer."

7

Circuit precedent to determine whether, in the context of the immigration laws, the crime of which Zaranska was convicted was a crime involving moral turpitude. Contrary to respondents' argument that the Court should defer to the BIA's conclusion of whether an offense involves moral turpitude, the Second Circuit made clear in *Michel v. INS* that "'[w]e must uphold the BIA's determination of what conduct constitutes moral turpitude [under the Immigration and Nationality Act ("INA")] if it is reasonable. However, a determination that the elements of a crime constitute moral turpitude for purposes [of the INA] is a question of law, which we review *de novo*.'" 206 F.3d 253, 262 (2d Cir. 2000) (citing *Hamdan v. INS*, 98 F.3d 183, 185 (5th Cir. 1996). In *Michel*, the Second Circuit deferred to the BIA's categorical analysis, which determined that the definition of moral turpitude embraced any knowing possession of stolen property, without consideration of the trivial nature of the property the individual applicant was convicted of possessing, because it was reasonable to equate conduct involving knowledge or intent with a "'vicious motive or a corrupt mind'"; however, the Second Circuit made a *de novo* determination that "all of the violations [of the NY penal law at issue] are, by their nature, morally turpitudinous because knowledge is a requisite element of [the NY law] and corrupt scienter is the touchstone of moral turpitude." *Michel*, 206 F.3d at 263-64. The determination whether the crime at issue fits the BIA's definition of moral turpitude is therefore one that the Court undertakes *de novo*, without deference to the BIA's application of the definition of moral turpitude in the context of other criminal statutes.

Upon a *de novo* review, the Court finds that Judge Azrack's analysis of Second

Circuit precedent regarding the issue of whether the crime at issue is morally turpitudinous is thorough and well-reasoned, and the Court agrees with the conclusion that the crime is not one involving moral turpitude for purposes of the INA. The Court further agrees that *Danesh*, the BIA case upon which respondents rely, is distinguishable, and to the extent that case purports to expand the definition of moral turpitude beyond that established by previous and subsequent BIA decisions, and which this Circuit has upheld as reasonable, that expansion is not entitled to deference. *Cf. Michel*, 206 F.3d at 264 (finding a definition of moral turpitude which equated knowledge or intent to perform an inherently bad act with a "vicious motive or corrupt mind" to be reasonable). Finally, because the Court concludes that Magistrate Judge Azrack correctly determined that the crime of which Zaranksa was convicted was not a crime of moral turpitude, the Court need not address whether application of the rule of lenity was proper in this context.

## II.

Based upon its *de novo* review, the Court adopts Magistrate Judge Azrack's R&R, and denies respondents' motions to dismiss and for summary judgment.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, NY
November 10, 2005

9